**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **MULLEN INDUSTRIES LLC,** | § | |
| *Plaintiffs* | § | |
| | § | **W-22-CV-00145-ADA** |
| **–vs–** | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant* | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA**

Before the Court is Defendant Apple Inc.'s ("Apple's") Motion to Transfer Venue to the Northern District of California. ECF No. 39. Plaintiff Mullen Industries LLC ("Mullen") opposes the motion. ECF No. 61. Apple filed a reply to further support its motion. ECF No. 66. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Apple's motion to transfer venue to the Northern District of California.

## I.      FACTUAL BACKGROUND

In its complaint, Mullen claims Apple infringed on U.S. Patent Nos. 11,246,024 ( "'024 patent"), 11,232,117 ( "'117 patent"), 11,190,633 ("'633 patent"), 11,122,418 ("'418 patent"), 11,109,218 ("'218 patent"), 11,096,039 ("'039 patent"), 9,635,540 ("'540 patent"), 9,204,283 ("'283 patent"), and 8,374,575 ("'575 patent") (collectively, the "asserted patents"), which relate to security improvements for wireless devices. ECF No. 25 ¶ 1. Mullen, the owner of the asserted patents, is a limited liability company organized under the laws of the state of Delaware. *Id.* ¶ 28. Apple is a corporation organized under the laws of California with its principal place of business in Cupertino, California. *Id.* ¶ 29. According to Mullen, various versions of Apple's Mac computers, iPhones, iPads, Watch, iPod Touch, iCloud server system infringe upon the asserted

1

patents. ECF No. 39 at 2. The Court will refer to these products collectively as the "accused products."

After responding to Mullen's amended complaint, Apple filed the instant motion to transfer. ECF No. 39. Apple does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses and the location of relevant records. *Id*. at 1. Mullen contends that the case should remain in the WDTX, pointing to, among other factors, the relevant witnesses located in Texas and the evidence available in this District. ECF No. 48 at 1.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . ." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the

relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. ECF No. 39 at 6; ECF No. 61 at 10. Apple's headquarters are located in the NDCA. ECF No. 39 at 6. This Court therefore finds that venue would have been proper in the

NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

## A.  The Private Interest Factors

### i.  *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" when witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Apple, its technical, finance, marketing, and licensing employees for the accused products are located in California. ECF No. 39 at 3−4. Mullen identifies Apple employees

in the WDTX that it argues are relevant to this case. ECF No. 61 at 13. Both groups of witnesses will be discussed below.

### 1.   Apple Employees in the NDCA and Southern California

According to Apple, this factor favors transfer because "*all* of Apple's likely witnesses are located in the NDCA." ECF No. 39 at 11 (emphasis in original). Apple argues that its likely witnesses are Apple engineers who worked on the engineering, development, integration, and testing of the accused features into the accused products. *Id.* Apple identifies the following engineers in California: (1) Scott Lopatin, an Engineering Manager at the Find My US Group, and (2) James Carey, a Software Development Manager on the Watch Software team. *Id.* at 3. Mr. Lopatin works in Santa Clara Valley, California and his team is primarily located in the NDCA. *Id.* One employee on Mr. Lopatin's team is located in Huntington Beach, California and another is located in Canada. *Id.* Mr. Cary and his team are primarily located in the NDCA; however, one of Mr. Cary's employees is located in Colorado and another, Austen Green, is located in Dallas, Texas. *Id.* at 3 & n.2. A former member of Mr. Cary's Watch Software team, Ant Dzeryn, now works in Austin, Texas with a different Apple Watch team. *Id.* at 3 n.2.

In response, Mullen argues that Messrs. Lopatin and Cary are not relevant and Apple "exaggerates the importance of source code." ECF No. 61 at 14. Mullen argues that the "source code is much less relevant to this case because infringement of most if not all claim elements is shown by observing the operation of the accused products." *Id.* at 12. Mullen further argues that if the source code is relevant, the parties' experts, not Apple's employee witnesses, will explain the source code to the jury. *Id.* at 14. Mullen also argues that Mr. Dzeryn's knowledge of the Apple Watch source code is likely as helpful as Mr. Cary's. *Id.* Mullen points out that Mr. Dzeryn is an inventor on Apple's patent regarding Watch notifications, but Mr. Cary is not. *Id.*

With regard to Apple's identified technical witnesses in California, the Court finds that these witnesses weigh in favor of transfer. Apple has shown that Messrs. Lopatin and Cary have knowledge relevant to the accused features of the accused products. Mr. Lopatin has knowledge of the Find My feature, which Mullen has accused of infringing all but one of the asserted patents. ECF No. 39 at 3; ECF No. 25 ¶¶ 75, 120, 135, 146, 158, 171, 186, 199. Mr. Cary has knowledge of the Watch notification software, which Mullen has accused of infringing at least one of the asserted patents. ECF No. 39 at 3; ECF No. 25 ¶ 103. Because Messrs. Lopatin and Cary have knowledge relevant to the accused functionalities of the accused products, they are likely relevant to this case.

While Mullen argues that Apple overstates the importance of source code, Mullen's explanation of the asserted patents in its Amended Complaint shows the importance of the source code to determining infringement. In the Amended Complaint, Mullen explains that the asserted patents teach "a mobile device that can receive and display location information regarding another mobile device by 'contact[ing] the remote database, hav[ing] his/her identity recognized, hav[ing] his/her access rights for the requested user location determined, and, if the requesting user has the correct access rights, be[ing] provided with the requested user's location." ECF No. 25 ¶ 6 (quoting the '418 patent). The Amended Complaint further states that the asserted patents "describe that 'different types of access levels may be provided that allow a user to filter location information to a different user.'" *Id.* ¶ 7 (quoting the '418 patent). Lastly, the Amended Complaint explains that the asserted patents "solve technical challenges related to receiving and providing event notifications and location-based information, such as location markers on a map, navigable directions, and distance information, on mobile devices with small display screens." *Id.* ¶ 8. While the asserted patents also involve physical components, such as processors, positioning systems,

and memory, the Amended Complaint itself shows that the key innovation of the asserted patents relates to software. Thus, Apple's source code may be important to determining infringement. Further, even if the parties' experts will likely describe Apple's source code to the jury, fact witnesses from Apple may also be called to testify regarding Apple's source code. The Court finds the presence of Messrs. Lopatin and Cary in the NDCA weighs in favor of transfer.

Apple also claims that its employees with knowledge of the marketing, licensing, and finances of the accused products will also be relevant. *Id.* at 11. Apple identifies the following marketing, licensing, and finance employees in the NDCA: (1) Mark Rollins, a Senior Finance Manager, who is knowledgeable regarding the sales and financial information related to the accused products; (2) Drew Williams, a Product Manager on the Apple Maps product team and the only employee at Apple responsible for the marketing strategy of the Find My functionalities; (3) Eric Charles, a Product Manager on the Watch Product Marketing team with knowledge of the marketing of the Apple Watch; and (4) Jeff Lasker, a Principal Counsel and Senior Manager of the IP Analytics team, with knowledge of the intellectual property licensing at Apple. *Id.* at 4. Apple claims that other employees with knowledge of the financials of the accused products are located in California. *Id.* Further, Apple claims that all of the members of the Watch Product Marketing team are located in Cupertino, California. *Id.* Lastly, Apple claims that all of the employees with knowledge of Apple's patent licensing and transactions are located in the NDCA, except for two employees based in Colorado. *Id.* Apple argues that the NDCA is more convenient for its employees in California because the NDCA is significantly closer for these employees than the WDTX. *Id.* at 12.

In response, Mullen argues that Messrs. Williams and Charles likely possess less relevant knowledge than Plaintiff's identified witnesses in the WDTX. *Id.* Lastly, Mullen argues that Mr.

Lasker is not relevant because Apple has not identified what he may testify about at trial. *Id.* Mullen also argues that travelling to the WDTX would not be inconvenient for Mr. Lasker because he stated in his declaration that he may be travelling to this District to testify in other cases. *Id.* at 14.

As for Apple's identified non-technical witnesses in the NDCA, the Court finds that these witnesses weigh in favor of transfer. While Mullen argues that Messrs. Williams and Charles likely possess less relevant knowledge than Plaintiff's identified witnesses in the WDTX, Mullen has not disputed that they may have information relevant to Apple's marketing of the accused products. Importantly, Mr. Williams is the only person at Apple directly responsible for marketing the Find My functionality. ECF No. 39 at 4. The Court finds that Messrs. Williams and Charles have knowledge relevant to the marketing of the accused products. Mullen also argues that Mr. Lasker is not relevant because Apple has not identified what he may testify about at trial. ECF No. 61 at 14. However, Apple has stated that Mr. Lasker has knowledge of Apple's patent licensing. ECF No. 39 at 4. Mullen argues that travelling to the WDTX would not be inconvenient for Mr. Lasker because he stated in his declaration that he may be travelling to this District to testify in other cases. ECF No. 61 at 14. The Court rejects this argument. The relevant consideration for determining convenience for willing witnesses is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). Mr. Lasker will still be away from his home and work for an extended period of time if he is called to testify in the WDTX for this case. The Court finds that Mr. Lasker may have relevant knowledge of Apple's patent licensing practices, which may be relevant to determining damages in this case, and his presence in the NDCA weighs in favor of transfer.

The Court finds that Apple has relevant technical and non-technical employees in or near the NDCA.

### 2. Apple Employees in Texas

Mullen identifies six Apple employees in the WDTX who write and maintain "How-To" documents for the accused features of the accused products. ECF No. 61 at 13. Mullen specifically identifies: (1) ███████████, the Content Development Manager of Find My; (2) ███ ███████, Technical Writer and Strategist for Find My; (3) ████████, Strategist for Find My; (4) ███████████, Writer for Find My; (5) ██████████, Designer for Find My; and (6) ██████████, Content Development Manager for Apple Watch notifications. *Id.* at 7. Mullen argues that it expects to call most, or all, of these witnesses at trial because Mullen has relied on Apple's "How-To" documents to show infringement. *Id.* at. 13. In response, Apple argues that these employees who write "How-To" documents do so at the direction of employees in California. ECF No. 66 at 2.

With respect to the Apple employees in the WDTX who write "How-To" documents, the Court agrees with Apple. These employees are unlikely to be called to testify at trial. While Mullen may rely on the "How-To" documents to show infringement at the pleadings stage, at trial, Mullen will likely also rely on internal documentation, such as documentation from Apple's engineers in the NDCA, produced by Apple during fact discovery. Further, even if Mullen relies on the "How-To" documents to show infringement at trial, as Apple has noted, the Apple employees in the WDTX who wrote the "How-To" documents did so at the direction of employees with greater technical knowledge of the accused functionalities. It is more likely that Apple, or Mullen, will call technical employees from Apple to testify regarding the accused functionalities. Mullen has

failed to show why writers of the "How-To" documents would be more relevant to testify at trial than Apple's technical employees.

Mullen further identifies two Apple witnesses in the WDTX that test the Find My feature: ███████████████████. ECF No. 61 at 7−8. Mullen argues that each of these Find My testers likely "focused on different aspects of the software or provided different feedback." *Id.* at 13. In response, Apple points out that these employees only tested the Find My software for "███████████████████████████████████████████████████████████ ██████████." ECF No. 66 at 2 (quoting ECF No. 66-2).

The Court finds that these two Find My testers weigh, at most, slightly against transfer. Because Apple has shown that these employees only tested the Find My software for a few months, these employees likely do not have significant relevant information regarding the accused products. The Court concludes that it is unlikely that they will testify at trial. Thus, the Court finds that their presence in the WDTX does not weigh strongly against of transfer.

Mullen also identifies two Apple employees in the WDTX who develop training materials for Apple Care employees: (1) █████████████, Apple Care Mentor and Trainer, and (2) █████, Senior Training Development Manager for Apple Care. ECF No. 61 at 8. Mullen argues that Ms. █████ is likely to testify at trial because she designs the Find My training materials. *Id.* at 13. Mullen argues that Mr. █████████ is likely to testify regarding consumers' use of the accused functionalities. *Id.* In response, Apple argues that Mullen has failed to show why these three employees are relevant to either infringement or damages. ECF No. 66 at 2−3.

With respect to the AppleCare training employees, the Court agrees with Apple. Ms. █████ and Mr. █████████ are unlikely to testify at trial. While these employees have some knowledge of the accused products, technical Apple employees are more likely to testify at trial

with respect to infringement and Apple's marketing and financial employees are more likely to testify at trial with respect to damages. Mullen has not shown how AppleCare training employees are relevant to this case.

Further, Mullen identifies three Apple employees with knowledge of the financial aspects of the accused products: (1) ███████, Finance Director, (2) ██████████, Business Planning and Strategy, and (3) ██████, Americas Supply Demand Manager. ECF No. 61 at 9. Mullen argues that each of these financial witnesses have a different area of focus. *Id.* at 14. In response, Apple argues that no witness in Texas is able to speak to the relevant financial records at the depth that Apple's identified witness, Mr. Rollins, is able to. ECF No. 66 at 3.

The Court finds that the financial employees identified by Mullen weigh slightly against transfer. Mr. ███ may have information relevant to damages. But his oversight of accounts payable and accounts receivable is unlikely to be specific to the accused products or the accused functionalities. Further, Mss. ███ and ███ may have knowledge relevant to damages for the accused products because their positions at Apple involve forecasting demand. However, Ms. ███ and Ms. ███ knowledge is likely limited to forecasting supply and demand. Thus, the Court finds that the financial Apple employees identified by Mullen likely possess a limited scope of knowledge. A few of the employees identified by Apple, such as Drew Williams and Eric Charles, likely possess more specific knowledge of the accused functionalities.

Lastly, Mullen identifies three technical employees in the WDTX with knowledge of the accused products: (1) Antony Dzeryn, former Software Engineer at Apple Watch Notifications, (2) ██████████, Software Engineer in the Cloud Infrastructure Cassandra Integration Team, and (3) ███████, Software Engineer at Apple Maps Navigation. ECF No. 61 at 9. Mullen argues that Mr. Dzeryn possesses knowledge of the Apple Watch notifications. *Id.* at 14.

Mullen further argues that Mr. Dzeryn's knowledge of the Apple Watch notifications is likely just as helpful as Mr. Cary's knowledge. *Id.* Mullen points out that Mr. Dzeryn is an inventor on Apple's patent related to the Watch notifications. *Id.* Mullen further argues that Mr. ███████ has knowledge of Apple's Cassandra database, which is relevant to the "storing" claims of the asserted patents, and Mr. ██████ has knowledge of Apple Maps navigation, which is relevant to the "map" and "directions" claims of the asserted patents. *Id.* at 14.

In response, Apple argues that Mr. Dzeryn's knowledge of the accused functionalities of the Apple Watch is outdated because he left the Apple Watch team in 2016. ECF No. 66 at 3. Mr. Dzeryn's declaration states that he believes Mr. Cary has more relevant knowledge of the accused functionality of the Apple Watch. ECF No. 39-3 ¶ 4. Apple further argues that Mr. ██████████ ████████████████████████████████████████████████████████ ████████████████." ECF No. 39 at 4. Mr. █████████ declaration states that he has never worked on the Find My feature. ECF No. 39-11 ¶ 3. With respect to Mr. ██████ Apple argues that his presence in Austin is not relevant to the analysis because he moved to the WDTX after the complaint was filed. ECF No. 66 at 3.

The Court finds that Mr. Dzeryn's presence in the WDTX weighs at least slightly against transfer. Mr. Dzeryn worked on the accused functionality of the Apple Watch for three years. ECF No. 39-3 ¶ 3. Mr. Dzeryn is an inventor on a patent related to the accused functionalities. ECF No. 61 at 14. However, Mr. Dzeryn's knowledge may be limited because he left the Apple Watch team in 2016. In comparison, Mr. Cary, who is based in the NDCA, has continued to work on the Apple Watch Software team and now manages that group. ECF No. 39-3 at ¶ 4.

The Court finds that Mr. ███████████ presence in the WDTX does not weigh heavily against transfer. As Apple has explained, Mr. ██████████ role is not tied to the accused

products. While Mr. ███████ may possess knowledge relevant to the alleged infringement, Mr. ███████ has declared that he has never worked on the accused Find My functionality. ECF No. 39-11 ¶ 3. Because Mr. ███████ has not worked on the accused functionality and seems to have no knowledge of how the Cassandra open-source database management system relates to the Find My functionality, the Court believes it is unlikely that Mr. ███████ will testify at trial.

As for Mr. ███████ the Court disagrees with Apple that his presence in the WDTX should be disregarded because he did not live in this District at the time that the suit was filed. As this Court has previously held, post-complaint facts do not need to disregarded when analyzing the convenience factors. *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-cv-00097-ADA, 2022 WL 1593366, at * 6 (W.D. Tex. May 19, 2022). "Holding otherwise permits transfer to a forum that, at the time of transfer is *inconvenient*—so long as it *was* convenient when the suit was filed." *Id.* (emphasis in original). However, the Court agrees with Apple that Mullen has failed to show why Mr. ███████ would be relevant in this case. Based on deposition testimony from one of Apple's corporate representatives, Mr. ███████ "█████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████." ECF No. 66-6 at 31:11-19. While Mullen claims that Mr. ███████ "█████████████████████████████ ███████████████████████████████ claims, Mr. ███████ knowledge appears to be focused on the Apple Maps application functionality, not the maps functionality for the Find My

accused feature. Thus, the Court concludes that Mr. █████ is unlikely to testify at trial in this case.

### 3. Conclusion

Apple has identified six relevant witnesses in California. A couple of relevant Apple employees may be based in the WDTX. However, Apple's California-based employees are likely more relevant because they are involved in the development and marketing of the accused functionalities of the accused products. Thus, the Court finds this factor weighs in favor of transfer.

### *ii.* *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

Apple argues that this factor favors transfer because the bulk of the evidence is located in the NDCA. ECF No. 29 at 8. Apple claims that electronic documents and source code regarding the accused products is located on servers in the NDCA or accessible in the NDCA. *Id.* at 4. Apple claims that "[t]he research, design, and development of the Accused Features took place at Apple's facilities in the NDCA." *Id.* at 8. Apple argues that the document custodians of the relevant technical documents and source code are located in the NDCA. *Id.* Further, Apple argues that the document custodians of the relevant marketing, finance, and licensing documents are also located in the NDCA. *Id.* Apple argues that there are no relevant documents in the WDTX because the

relevant document custodians are not located in the WDTX. *Id.* Apple further claims that it "has not identified any relevant documents that were generated or are stored in the WDTX." *Id.* at 5.

In response, Mullen argues that this factor weighs against transfer because Mullen intends to rely on "How-To" documents that are written and maintained by employees in the WDTX. ECF No. 61 at 11−12. Mullen claims that it intends to use these documents to show infringement of the accused features. *Id.* at 12. Mullen also argues that this factor favors transfer because search engine optimization data is analyzed by Apple employees in the WDTX to determine what Find My features appeal to consumers. *Id.* Mullen also argues that this factor disfavors transfer because Find My test records are stored with Find My testers in this District and Find My and Apple Watch training materials are located in this District. *Id.* Mullen further argues that this factor weighs against transfer because "███████████████████████████████████████████████ ███████████████████████████████████████████████." *Id.* Lastly, Mullen argues that documents generated by finance employees in this District disfavor transfer. *Id.*

In its reply, Apple argues that the "How-To" documents are drafted at the direction of employees in California. ECF No. 66 at 2. With respect to the search engine optimization data, Apple argues that this data is passed down to the "How-To" team to help ensure that the writers of the "How-To" articles use language that customers use when searching for help. *Id.* Apple argues that the Find My testing data in the WDTX is limited because the Find My testers located in this District only worked on testing Find My for one to three months. *Id.* With respect to the training materials located in the WDTX, Apple argues that Mullen has failed to show that these materials are relevant to infringement or damages. *Id.* at 2−3. For the financial documents in the WDTX, Apple argues that the more relevant financial documents are located in the NDCA. *Id.* at 3.

First, the Court agrees with Apple that the presence of custodians of relevant research, development, and design documents in the NDCA weighs in favor of transfer. As discussed in the previous factor, Apple has identified at least six California-based employees with relevant knowledge of the technical, marketing, financial, and legal aspects of the accused products that may testify in this case. Many of these employees lead or belong to teams that are based in the NDCA. Thus, the Court concludes that at least some relevant documents are created and maintained by Apple employees in the NDCA.

Second, the Court agrees in part with Mullen that the presence of custodians of the "How-To" documents weighs against transfer. Mullen claims that it intends to use these documents to prove its infringement case. ECF No. 61 at 11−12. These documents are created and maintained by Apple employees in the WDTX, which weighs against transfer. However, the Court also believes that Mullen will likely rely on Apple's internal documentation produced during fact discovery. This internal documentation is likely created and maintained by Apple engineers working on the accused products. These engineers appear to be primarily located in the NDCA. Thus, the Court limits the weight of the location of Apple's "How-to" content writers.

The Court disagrees with Mullen that the search engine optimization data in the WDTX weighs against transfer. As one of Apple's witnesses stated in a deposition, ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. ECF No. 66-1 at 11. Based on the information provided, it does not seem that the search engine optimization data is analyzed in the WDTX. *Id.* And even if the search engine optimization data were analyzed in the WDTX, Mullen has not explained why this data is relevant to proving infringement, validity, or damages.

Thus, the Court finds the presence of search engine optimization data in the WDTX does not weigh in favor of transfer.

For the training materials and customer data created and maintained in the WDTX, this Court also disagrees with Mullen. Mullen has not shown why these training materials and customer data is relevant to proving its case for infringement, validity, or damages. While Mullen argues that the customer inquiry data is "highly relevant to damages, including the value of the demand for Plaintiff's patented technologies," Mullen has failed to show how customer inquiry data is connected to the damages analysis under *Georgia-Pacific*. Thus, the Court does not consider the presence of training materials and customer inquiry data in this District under the analysis of this factor.

Finally, the Court finds that the presence of financial records created and maintained by Apple's finance employees in the WDTX weighs slightly against transfer. As discussed above, Mullen has identified three Apple finance employees that work in the WDTX. And as the Court found above, these employees may possess knowledge relevant to determining damages in this case, although their knowledge is likely limited due to the scope of their roles at Apple. Because these employees may be relevant witnesses, they may also create and maintain documents that are relevant in this case. Thus, the Court finds that at least some relevant documents may be created and maintained by Apple finance employees in the WDTX.

Because the Court finds that more relevant document custodians likely reside in the NDCA rather than the WDTX, the Court concludes that this factor weighs in favor of transfer.

### iii.  *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in

person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

Apple argues that this factor favors transfer because the following prior artists are located in California within the subpoena power of the NDCA: (1) David Curbow, (2) Hirohisa Tanaka, (3) Catherine Lee Mulford, (4) Corena Dusek, (5) Rajamani Ganesh, and (6) Stephen Petilli. ECF No. 39 at 10. Apple argues that these prior artists are relevant because Apple has relied on these references from these prior artists in its invalidity contentions. *Id.* at 9.

Mullen argues that this factor weighs against transfer because there are more third-party witnesses in the WDTX than in the NDCA. ECF No. 61 at 10−11. Mullen argues that twelve employees from ███████████ are relevant at trial. *Id.* at 11. Mullen points out that ███ develops, manufactures, tests, and ships the accused Mac Pro products. *Id.* at 1. Mullen further notes that ███ installs in Mac Pro products the positioning system, processor, and memory, which are all claim elements in the asserted patents. *Id.* Mullen also points to at least one witness from ███████████. *Id.* at 11. Mullen claims that witnesses from ███████ help write and maintain the Apple's "How-To" documents. *Id.* Mullen also notes that two former AppleCare employees live in the WDTX: ███████████████████. *Id.* at 8. Mullen claims that

"████████████ . . . have extensive knowledge regarding Apple's training of AppleCare advisors on the accused features." *Id.* at 11. Mullen also identifies ten prior art witnesses within this Court's subpoena power who are identified in Apple's invalidity contentions. *Id.*

In response, Apple argues that ████ assembles only one of the fifteen accused products in this case. ECF No. 66 at 3−4. Apple notes that ████ only assembles the Mac Pro desktop computer and the Mac Pro desktop computer is only accused of infringing two of the asserted patents. *Id.* at 4. Apple claims that the assembly and manufacturing of the Mac Pro components is irrelevant to infringement in this case because the software that contains the Find My feature is received by the Mac Pro product ██████████████████████." *Id.* As for ████████ witnesses, Apple claims that these witnesses do not possess any relevant knowledge. *Id.* at 4−5. Apple claims that the ██████ employees work "██████████████████████." *Id.* at 5 (quoting ECF No. 66-1). As for ██████, Apple argues that he was a "people business partner" akin to Human Resources and he does not possess any relevant knowledge. *Id.* Apple argues that Mr. ████ was a Technical Support employee, whose role involved "████████████████████████ ██████████████████████"" *Id.* (quoting ECF No. 62-10 at 28). Lastly, Apple argues that the prior artists in the WDTX are not authors of "primary reference[s]" in Apple's invalidity contentions. *Id.*

The Court concludes that the presence of relevant prior artists in the NDCA weighs in favor of transfer. Mullen does not dispute that these prior artists may be relevant at trial. However, the Court also concludes that the presence of relevant prior artists in the Texas weighs against transfer. While Apple claims that the Texas-based prior artists are not authors of "primary reference[s]" in its invalidity contentions, Apple still cites to ten Texas-based prior artists in its invalidity

contentions. ECF No. 62-13. While Apple plans to rely on the prior art from the six inventors in California, the ten Texas-based inventors may also be relevant at trial.

The Court concludes that the presence of ███ employees in the WDTX does not weigh heavily against transfer. While ███ assembles one of the fifteen accused products, its involvement with the accused products relates to the manufacture and assembly of the physical product. Mullen's complaint explains that the asserted patents teach "a mobile device that can receive and display location information regarding another mobile device by 'contact[ing] the remote database, hav[ing] his/her identity recognized, hav[ing] his/her access rights for the requested user location determined, and, if the requesting user has the correct access rights, be[ing] provided with the requested user's location." ECF No. 25 ¶ 6 (quoting the '418 patent). The complaint adds that the asserted patents "describe that 'different types of access levels may be provided that allow a user to filter location information to a different user.'" *Id.* ¶ 7 (quoting the '418 patent). Lastly, the complaint explains that the asserted patents "solve technical challenges related to receiving and providing event notifications and location-based information, such as location markers on a map, navigable directions, and distance information, on mobile devices with small display screens." *Id.* ¶ 8. Based on the complaint, Apple's alleged infringement in this case relates primarily to Apple's software. The Court believes it is unlikely that ███ employees, who participate in the manufacture and assembly of one of the accused products, possess relevant knowledge of Apple's Find My software.

As for Mr. ███ and other witnesses from ███, the Court concludes that these witnesses are unlikely to possess relevant knowledge for trial. As discussed above, the authors of Apple's "How-to" documents wrote these documents at the direction of employees with greater technical knowledge of the accused functionalities. It is more likely that Apple, or Mullen, will

call technical employees from Apple to testify about the accused functionalities. Mullen has failed to show why Mr. ███ or any of the other potential witnesses from ███████ would be more relevant to testify at trial than Apple's technical employees.

Lastly, with respect to Messrs. ██████████, the Court similarly concludes that these former AppleCare employees are unlikely to testify at trial. As discussed above, AppleCare training employees are unlikely to testify at trial. While these employees have knowledge of the accused products, technical Apple employees are more likely to testify at trial with respect to infringement and Apple's marketing and financial employees are more likely to testify at trial with respect to damages. Mullen has not shown how AppleCare training employees are relevant.

Because prior artists are located in both forums, the Court concludes that this factor is neutral.

### iv.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Apple and Mullen agree that this factor is neutral. ECF No. 39 at 13; ECF No. 61 at 14. Apple argues that because there is no co-pending litigation in either forum, this factor is neutral. ECF No. 39 at 13. The Court agrees.

## B. The Public Interest Factors

### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Apple argues that this factor is neutral because this case is in its infancy. ECF No. 39 at 13. Apple argues that because this case has not yet reached the *Markman* and discovery has not yet begun, transfer to the NDCA would not result in delay. *Id.* Apple argues that "both venues will proceed to trial along a similar timeline." *Id.* Apple also points out that the "WDTX has four times as many pending patent cases as the NDCA." *Id.* In response, Mullen argues that this factor disfavors transfer because this Court is able to reach trial faster than the NDCA. ECF No. 61 at 15.

While the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and the NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent statistics show that this Court has been able to bring cases to trial within two years.[1] The Federal Circuit has underscored the importance of rapid

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-

disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and the available time-to-trial statistics, the Court finds this factor weighs at least slightly against transfer.

### ii.    *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252,

---

ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*., No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Apple argues that the local interest factor weighs in favor of transfer because Apple designed, developed, tested, and marketed the accused Find My functionality in the NDCA. ECF No. 39 at 14. Apple argues that there are significant connections between the NDCA and the events that gave rise to the suit. *Id.* Apple argues that neither party has significant connections to the WDTX. *Id.* In its response, Mullen argues that the WDTX has a strong interest because ██ assembles the Mac Pro product in this District. ECF No. 61 at 15. Mullen argues that ██ will want to know if it is making an infringing product to seek indemnity from Apple. *Id.* Mullen also argues that Apple conducts activities relevant to this litigation, including writing "How-to" documents and training AppleCare employees. *Id.*

The Court agrees with Apple that the NDCA has a strong local interest in this case because the design and development of the accused functionality took place in that district. However, the Court also agrees with Mullen that ██ may have an interest in this litigation. Based on statements from one of Apple's corporate representatives, ████████████████████████████████ ████████████████████████. ECF No. at 9:3-8 ████████████████████ ████████████████████████████████████ ████████████████████████████████████). Thus, ██ may

infringe the asserted patents. The Court concludes that this District may have an interest in the outcome of this litigation based on ███ presence in the WDTX.

Because the NDCA likely has a greater local interest in this litigation than the WDTX, the Court finds that this factor weighs at least slightly in favor of transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Apple and Mullen agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 39 at 15; ECF No. 61 at 15. The Court agrees.

### iv.    *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Apple and Mullen agree that this factor is neutral—there are no potential conflicts here. ECF No. 39 at 15; ECF No. 61 at 15. The Court agrees.

## IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that three of the factors favor transfer, one disfavors transfer, and four factors are neutral. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, court congestion weighs against transfer. The sources of proof, willing witness, and local interest factors weigh in favor of transfer to the NDCA. The Court finds that Apple has met its burden of showing that the NDCA is a clearly more convenient forum. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Favors transfer |
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Slightly against transfer |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Apple's Motion to Transfer Venue to the Northern District of California is **GRANTED** (ECF No. 39).

**SIGNED** this 30th day of January, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE